Barnard, P. J.
Although the charter under which the parties claim title to the land in question is very old, it abundantly appears that there was no conflict between them in respect to the several grants to each. The town claims under two grants from the. crown of Great Britain. The defendant Smith claims under a grant from the same source. The town grant reserved something, and at this lapse of time it cannot be certainly said what were the particular boundaries of the reservation. _ It appears that in 1693 the ancestor of the defendant Smith had, with the *743 assent o£ the then governor-general of Hew York, purchased either the whole or a part thereof, being the reserved lands.
The town, by vote, assented that Smith might “purchase and peaceably enjoy the same.” Subsequently, and in the same year, Smith procured a warrant from the governor-general for the survey of these lands. Immediately after the warrant was obtained, the town and Smith fixed the north bounds of the proposed Smith purchase as against the town patent.
Smith received frorr^the governor-general the patent in the same year, 30th September, 1693, and that was read to the town authorities created under the town charter, and it was voted “that they had nothing to object against the lands ” of this patent. The freeholders assented, in May, 1694, to “forever acquiesce in the limits and bounds of the said patent.”
The validity of the grant to the town has been decided by the court of appeals in the case of The Trustees of Brookhaven v. Strong (60 N. Y., 56). These facts being established, the case seems a plain one. The charters are very old, as has been stated, and the real boundaries are uncertain, but the court of appeals, in the case of Brookhaven v. Strong, have furnished a safe rule by which to determine the controversy as to the boundaries. General words in a patent are but explained “by long use under it.”
It appears that in 1767, the town and Smith compromised a dispute by agreeing to hold certain of the lands in common, and this agreement has been followed ever since as to the lands covered by this conveyance. The next year a compromise was made in respect to another portion of the lands claimed by Smith, and this agreement has been lived under ever since. These two agreements left a part of his grant from the crown adjacent to his homestead, and these premises are those in controversy. The evidence of title in Smith as against the town seems to be decisively established by the acts of the town itself.
In 1862, Smith and the town compromised their claim as to the lands in question upon the same conditions as were contained in the previous agreements. Smith conveyed to the town, and the town accepted the conveyance, upon an agreement to divide the rents and proceeds equally.
The town entered into possession and kept it, and performed the agreement, but subsequently the parties became dissatisfied, and the trustees, in December, 1873, re-conveyed the land, to take effect in April, 1879.
By this agreement, an undisputed line was fixed between the town and Smith, and Smith released the town from all *744 claims under the agreement, and the “ property reverts toEgbert T. Smith,” in the-words of the trustees’ resolution.
_ After these long-continued and decisive acts of the parties under the charter, mutually acquiesced in, it is too late for either party to question them. '
The judgment should, therefore, be affirmed, with costs. Pratt and Dykman, JJ., concur.